## THE BROOKLYN.

### JOHNSON v. THE BROOKLYN.

(District Court, S. D. New York. June 19, 1894.)

COLLISION—STEAM VESSELS CROSSING—RULE OF THE STARBOARD HAND.
Where a ferryboat, approaching her slip in the East river, saw a tug and tow coming up on her port hand, and blew them one whistle, thereby notifying the tug of her intention to insist on her right of way, and pass ahead, and there was then time and space for the tug to have avoided her by going astern or stopping, but the tug blew two whistles, and kept on until too late to avoid collision, *held*, that the tug was solely liable.

Libel by Lorenzo D. Johnson against the ferryboat Brooklyn in a case of collision.

Stewart & Macklin, for libelant.
Hyland & Zabriskie, for claimant.

BROWN, District Judge. On the 29th of April, 1892, at about 1 p. m., as the ferryboat Brooklyn, of the South Ferry, was approaching her New York slip, she came in collision with the tug R. S. Garrett, which had a schooner in tow on a hawser, and was rounding the Battery to go into the East river. The collision was at about right angles, the stem of the tug striking the ferryboat on her port side just forward of her paddle wheel. The libel was filed to recover the damages.

There is considerable difference in the testimony as to the position of the two boats at the time when they were first observed, and the whistles exchanged. There is no doubt, however, that the Brooklyn had the right of way to her slip, and that it was the duty of the Garrett to keep out of the way; and that the Brooklyn, when she was at least 600 feet from the New York shore, and the Garrett 200 to 300 feet below the slip, gave a signal of one whistle to the Garrett, which required the Garrett to go astern of the Brooklyn. The Garrett gave two short whistles in reply, and kept on, but reversed too late, and came in collision, as above stated.

The fault in this collision lies, I think, wholly with the Garrett. Whatever confusion about the signals may have arisen from an exchange of whistles between the Brooklyn and other vessels to her right before her signal of one whistle was given to the Garrett, that signal was a clear notice to the Garrett that the Brooklyn intended to assert her right of way to go into her slip, and that the Garrett must go astern. I have not the least doubt that at that time there was plenty of time and space for the Garrett to turn to starboard, or stop, if necessary, and thus avoid collision. The weight of proof is that at collision the head of the Brooklyn was only a few feet from the entrance to her slip, and the Garrett could not have been more than from 100 to 150 feet from the ends of the piers.

I could not exempt the Garrett from fault in this case, without virtually holding that tugs coming up near the shore can at pleasure reverse the rule of the road, and require ferryboats to forfeit their right of way to their slips, and to wait for the mere convenience of tugs hugging the shore contrary to law.

Nor can I hold the Brooklyn partly in fault upon the analogy of the case of The Fanwood, 28 Fed. 373, and many other similar cases. In all those cases the position of the other vessel was such as to show that she was intending to cross ahead and could not, or would not, keep out of the way. In the case of The Fanwood, the tug was already partly across the slip, while the ferryboat was far enough away to stop easily before reaching her. In this case the tug had not reached the ferryboat's slip, and when the ferryboat's signal of one whistle was given, the tug was far enough below the slip to enable her to stop without difficulty before reaching the line of the ferryboat's course. That was the tug's duty. The ferryboat had every reason to suppose that the tug would stop or turn to the right as it was her duty to do, and therefore properly kept

on; and the tug's contrary whistles and alarm came too late. The ferryboat stopped; to reverse would have been dangerous to the tug.

The libel is, therefore, dismissed, with costs.